| | |
|---|---|
| JOSEPH CORSINI, | Case No. 1:20-cv-05459-MKB-LB |
| *Plaintiff*, | |
| v. | |
| CITY OF NEW YORK, | |
| *Defendant*. | |

## FIRST AMENDED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

### I.   INTRODUCTION

1.      New York City (the "City") enforces its building and construction laws in a byzantine and nightmarish system that deprives property owners of the process due them under the U.S. Constitution. One such property owner is plaintiff Joseph Corsini ("Mr. Corsini" or "Plaintiff"). He brings this case to force the City to abide by fundamental constitutional requirements in its administrative procedures.

2.      Like thousands of New Yorkers past and present, Mr. Corsini wanted to keep pigeons, and he began constructing a coop on the roof of the duplex in which he lives in Queens. In the end, Mr. Corsini's pursuit of a time-honored New York City hobby left him with no pigeon coop and thousands of dollars in fines, in addition to fees he paid to an architect and his attorneys to guide him through a bureaucratic labyrinth lacking in basic procedural protections.

3.      While he constructed his coop, a neighbor complained, and the City, through its Department of Buildings (DOB), fined him for constructing the coop without a permit.

4.      He applied for a permit with the City, but the City would not issue one.

5.      Every day the City considered whether to issue a permit, he faced additional fines because, under the City's code, each day constitutes a new violation.

6.      He finally gave up and took the coop down. The City then fined him for not certifying that he took the coop down. Under the City's code, a property owner must not just fix a violation, but also certify the correction by filing an affidavit that he fixed the violation. Failing to certify was yet another violation with yet another series of fines on top of the fines the City imposed for the initial violation itself.

7.      The City issued two kinds of fines to Mr. Corsini. One set of fines could be challenged through the City's Environmental Control Board/Office of Administrative Trials and Hearings (ECB/OATH). The other set of fines Mr. Corsini could never challenge or appeal. He had one option: pay.

8.      For those fines for which the City provided an appeals process, the City conditioned Mr. Corsini's ability to access this process on the payment of all fine amounts he owed. This significant impediment on his ability to challenge the fairness or amount of any citation issued to him acted to discourage and ultimately deter him from filing an appeal.

9.      The government has a legitimate interest in ensuring that construction and buildings are safe. This interest may only be achieved in a manner consistent with the dictates of the U.S. Constitution, however. Under the Constitution, the government must provide defendants an opportunity to challenge erroneous determinations, have a court review the actions of the government, give defendants an opportunity to come into compliance with the law without facing additional penalties, and appeal adverse decisions without first paying significant

penalties. New York's process for prosecuting violations of its building and construction laws does not come close to meeting these standards.

## II.  JURISDICTION AND VENUE

10.  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

11.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

12.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged in this Complaint have occurred in this district and because a substantial portion of the property that is the subject of this action is located in this district.

## III.  PARTIES

13.  Plaintiff Joseph Corsini is a resident of the Borough of Queens, New York, New York. With his wife, he owns a home on 70th Street in the Maspeth neighborhood of Queens that is part of a duplex. From 2016 through 2017, the City subjected him to the DOB's unconstitutional process and penalties.

14.  Defendant City of New York is a municipal corporation organized under the constitution and laws of the State of New York.

15.  The City's officers and employees carry out the City's unconstitutional and procedurally deficient policies and practices associated with prosecuting violations of the City's building and construction codes.

# IV.  FACTUAL ALLEGATIONS

## The City's Building and Construction Enforcement Process

16.     The City's administrative process for considering violations of the DOB's codes and regulations is so convoluted that it is difficult for those who are not part of it to comprehend or navigate it without making costly mistakes.

### *The Configuration of the City's Enforcement Machine*

17.     The DOB implements the City's construction code (the "Construction Code"), which includes the City's building code. It reviews and issues permits and licenses, inspects buildings, and enforces compliance with the Construction Code. *See generally* N.Y.C. Admin. Code Title 28, ch. 1-10 (Construction Code); NYC Admin. Code Title 28, ch. 7 (Building Code).

18.     The DOB's Administrative Enforcement Unit processes summonses and violations issued by the DOB's inspection and safety and enforcement units and prosecutes these summons and violations in front of the City's ECB/OATH. *See generally* N.Y.C. Admin. Code Title 28, ch. 2 (enforcement); N.Y.C. Charter ch. 45-A (OATH); N.Y.C. Charter ch. 45-A, § 1049-a (Environmental Control Board); 48 R.C.N.Y. §§ 1-01–7-08 (OATH).

19.     OATH's Hearings Division has largely subsumed the ECB's adjudicative responsibilities, and ECB no longer functions as an independent entity outside of OATH. *See* New York, N.Y., Local Law No. 35 of 2008 (placing the ECB into OATH); N.Y.C. Charter ch. 45-A, § 1049-a ("There shall be in the office of administrative trials and hearings an environmental control board[.]").

20.     OATH is the central administrative tribunal for the City. It conducts "adjudicatory hearings for all agencies of the city." N.Y.C. Charter ch. 45-A, § 1048(1). It has general jurisdiction, and the heads of City agencies may elect to have any matter heard before OATH. Sherry M. Cohen and Joanna Weiss, *Know Your Audience: How NYC Tribunals Have Addressed*

*Self-Represented Litigants and Increased Access to Justice*, 29 J. Nat'l Ass'n Admin. L.

Judiciary 485 (2009), *available at* http://digitalcommons.pepperdine.edu/naalj/vol29/iss2/3.

21.     Many of those who appear before OATH tribunals are self-represented. *Id*. at 486.

*Overview of Construction Code Violations*

22.     There are hundreds of different ways to violate the Construction Code. Violations

are divided into three classifications: immediately hazardous (Class 1), major (Class 2), and

lesser (Class 3). N.Y.C. Admin. Code §§ 28-201.2–201.2.3.

23.     The classification of a violation dictates the level of penalties that apply and what

options are available to the respondent (the person to whom a violation is issued, typically the

property owner) for resolving any violation.

24.      The penalties for Class 1 violations range from $1,000 to $25,000. 1 R.C.N.Y.

§ 102-01(k).

25.     Penalty amounts are set by law, and OATH hearing officers do not have the

discretion to alter or waive a penalty amount.[1]

26.     Unlike other violations, work without a permit—Mr. Corsini's initial violation—

can be deemed any class of penalty, either Class 1, 2, or 3. N.Y.C. Admin. Code § 28-105.1; 1

R.C.N.Y. § 102-01(k).

27.     For construction work without permit violations deemed Class 1, the initial fine is

$2,500. 1 R.C.N.Y. § 102-01(k).

28.     Each day a violation exists is deemed a separate and distinct offense. N.Y.C.

Admin. Code § 28-202.2.

---

[1] *See* OATH, Penalties, https://www1.nyc.gov/site/oath/clerks-office/penalties.page (last visited
Nov. 6, 2020) ("Hearing Officers do not have the discretion to alter or waive a penalty amount
because all penalties are set by law.").

29.     Violations issued by the DOB can be categorized into two categories: reviewable violations and unreviewable violations. As the DOB phrased it, there are "two types of violations our inspectors issue . . . . One type of violation is heard at the [ECB/OATH]. The other can generally be resolved administratively by working directly with us." N.Y.C. Buildings, Department of Buildings Guide to Violations 3, https://www1.nyc.gov/assets/buildings/pdf/violations-guide-english.pdf (last visited Nov. 6, 2020). This Complaint refers to the former as reviewable violations and the latter as unreviewable violations.

30.     Nothing in the code or rules describes a process by which an unreviewable violation may ever be reviewed by a neutral adjudicator, except for the DOB choosing to request the City's attorney to institute legal proceedings to compel correction if the respondent does not comply. N.Y.C. Admin. Code § 28-219.2.1.

*Unreviewable Violations*

31.     The DOB issues violations that are not reviewable at ECB/OATH hearings or by any other neutral adjudicator.

32.     There are dozens of different types of unreviewable violations. *See* N.Y.C. Buildings, Types of DOB Violations, https://www1.nyc.gov/site/buildings/safety/types-of-dob-violations.page (last visited Nov. 6, 2020).

33.     For each of these violations, there is no process or system in place by which a property owner may request any review or challenge the violations or penalties imposed.

34.     The only thing a respondent may do when they receive an unreviewable violation is pay the DOB. N.Y.C. Buildings, Department of Buildings Guide to Violations 3, https://www1.nyc.gov/assets/buildings/pdf/violations-guide-english.pdf ("Some violations that we issue do not require you to appear at an ECB hearing, but they may have fines you have to

pay. . . . You must resolve DOB violations quickly because some may accrue interest over time, which can substantially add to the total fine you have to pay.").

35.     The chart below demonstrates the path homeowners face upon receiving an unreviewable violation:



36.     Respondents who receive an unreviewable violation must pay the DOB directly.

37.     There is no mechanism in the City's laws, ordinances, rules, or policies that requires the City to return any penalties paid pursuant to unreviewable violations even when any related reviewable violations have been found to be invalid or withdrawn by the City.

*Reviewable Violations*

38.     In addition to the unreviewable violations, the DOB also issues reviewable violations for which respondents are afforded an administrative hearing.

39.     Upon discovering a code violation, the DOB issues a notice of violation, which initiates the enforcement process. N.Y.C. Admin. Code § 28-204.1. The notice of violation includes a variety of information, including (1) an ECB/OATH hearing date; (2) an order to correct and certify; (3) the violating conditions observed along with the infraction code, class,

standard penalty, maximum penalty, violation details, and remedy; and (4) instructions on the back for the recipient. 48 R.C.N.Y. §6-08(c).[2]

40.  The notice of violation serves three main purposes: It informs the person responsible for the building of the violation; acts as a summons to an ECB/OATH hearing; and orders the respondent to correct the violation.

*Order to Correct and Certify*

41.  In addition to the information described above, the notice of violation contains a commissioner's order to correct the violating condition and file a certification with the DOB that the condition has been corrected. N.Y.C. Admin. Code § 28-204.2; *see also* 1 R.C.N.Y. § 102-01(c).

42.  The order does not define what "correction" encompasses. None of the City's rules, regulations, or ordinances define what constitutes "correction" either.

43.  In reality, "correction" means not just physically fixing the violation but also (i) filing a notarized affidavit with the DOB certifying that the violation has been corrected, and (ii) paying any unreviewable violation civil penalties. Simply saying the violation has been corrected is insufficient; the DOB demands that respondents include documentary proof and swear under penalty of perjury that they corrected the violation.[3] Put another way, simply correcting a violation is insufficient to avoid penalties for the violation—the property owner must do all these things to come into compliance.

---

[2] *See also* Office of Administrative Trials and Hearings, OATH Summons/Violation Template, https://www1.nyc.gov/assets/buildings/pdf/Construction_Summons_ENGLISH.pdf (last visited Nov. 6, 2020).

[3] *See* N.Y.C. Buildings, AEU2: Certificate of Correction, https://www1.nyc.gov/assets/buildings/pdf/aeu2.pdf (last visited Nov. 6, 2020); N.Y.C. Buildings, Instructions: AEU2 Certificate of Correction Instructions, https://www1.nyc.gov/assets/buildings/pdf/aeu2ins.pdf (last visited Nov. 6, 2020).

44.     The only situation in which a respondent need not certify the correction to the DOB is if the violation is dismissed at an ECB/OATH hearing.

45.     Corrections must be completed quickly—immediately hazardous (Class 1) violations must be corrected "forthwith." 1 R.C.N.Y. § 102-01(c)(8).

46.     Failure to correct and to certify the correction of a violation is a new violation of the Construction Codes that is subject to new penalties that may be imposed in addition to the penalties stemming from the underlying violations. N.Y.C. Admin. Code §§ 28-204.4, 28-219.1; 1 R.C.N.Y. § 102-01(c)(9).

47.     The penalty for failing to certify the correction of an immediately hazardous condition is $1,500 (for one-and-two-family homes) and no less than $3,000 up to $5,000 (for all other properties), payable directly to the DOB. N.Y.C. Admin. Code § 28-219.1; 1 R.C.N.Y. § 102-05(a).

*Resolving Reviewable Violations*

48.     Once the DOB issues the initial notice of violation triggering the enforcement process and containing a summons for an ECB/OATH hearing, the respondent has two routes they may take: They may either admit and fix the violation, or they may contest it at a hearing.

49.     The chart below diagrams the options generally available, each of which are described in more detail in the following paragraphs:



*Admitting to the Notice of Violation*

50.     A respondent who wishes to admit to the notice of violation has up to four routes available. Three of the options enable the respondent to resolve the violation without attending a hearing: cure, stipulation, or simple payment. The fourth option for admitting a violation is mitigation, which occurs at the ECB/OATH hearing. All four require the respondent to fix the violation and certify the correction to the DOB.

51.     The classification of the violation dictates which option is available in a particular situation. Rule 102-01(k) contains a table listing specific violations, the classification, the applicable resolution option(s), and the applicable penalties. *See* 1 R.C.N.Y. § 102-01(k).

52.     For example, performing work without a permit in violation of section 28-105.1 that the DOB deems a Class 1 violation draws a standard penalty of $2,500 and a maximum

penalty of $25,000. 1 R.C.N.Y. § 102-01(k). Neither cure nor stipulation are available resolution options, though mitigation is. *Id.*

53.     Curing allows a respondent to fix the violation without penalty. When available, the respondent fixes the violating condition and certifies to the DOB that the violation has been corrected, at which point the penalty is eliminated. 1 R.C.N.Y. § 102-01(d)(1). This must be done before the scheduled ECB/OATH hearing and within 40 days from the notice of violation. *Id.* Curing operates as an admission of the violation. *Id.* As a result of curing, no ECB/OATH hearing occurs.

54.     No Class 1 violations are eligible for cure. 1 R.C.N.Y. § 102-01(d)(1).

55.     Stipulation allows a respondent to admit the violation and face a reduced penalty with an extended time to fix the violation. When available, the respondent admits to the violation and agrees to correct it and submit a certificate of correction. 1 R.C.N.Y. § 102-01(d)(2).

56.     Stipulation is not available for a Class 1 violation for work without a permit.

57.     The third option to resolve the violation is to admit to it and pay by mail or online. When available, no hearing is held. This option does not appear in the code or the rules but does appear on DOB's guidance documents.[4]

58.     However, simple payment is not an option for hazardous violations, and a respondent must appear at a hearing.[5]

---

[4] *See* N.Y.C. Buildings, Resolving Violations/Summonses: OATH, https://www1.nyc.gov/site/buildings/business/resolving-violations-ecb.page (last visited Nov. 6, 2020); N.Y.C. Buildings, Presentation: Resolving OATH Violations 8, https://www1.nyc.gov/assets/buildings/pdf/aeu_resolving_violations.pdf (last visited Nov. 6, 2020).

[5] *See* N.Y.C. Buildings, Violations – Frequently Asked Questions, No. 6, https://www1.nyc.gov/site/buildings/business/violation-frequently-asked-questions.page#violations_faq_q6 (last visited Nov. 6, 2020) ("If the violation is noted as hazardous or is a second offense, you must attend the scheduled hearing.").

59.     A respondent who wishes to admit to the violation but has not done so before the ECB/OATH hearing date may still do so through mitigation, if available.

60.     Mitigation occurs when a respondent shows at the ECB/OATH hearing that they (i) corrected all the violations listed in the summons, (ii) prior to the first hearing, and (iii) that the corrections were acceptable to the DOB. Mitigation reduces by half the penalty amount that otherwise would have been imposed at the hearing for the violation. 1 R.C.N.Y. § 102-01(d)(3). The respondent then must file a certificate of correction with the DOB. *Id.*

61.     Mitigation is not automatic, and any corrections the respondent makes must be done pursuant to the Construction Code.

62.     Prior to the hearing, respondents must obtain permits for any work that requires one before they can make the corrections required to mitigate the penalty. Many unsophisticated property owners do not realize this until they appear at their first hearing, at which point it is too late to mitigate the penalty.

63.     The amount of time that a City agency will take to issue a permit varies. However, upon information and belief, Plaintiff alleges that it takes around two months for the DOB to issue a construction permit to respondents familiar with the City's process. For unsophisticated respondents, the DOB may consider a permit for up to four-to-six months.

64.     When a property owner receives a reviewable violation for work without a permit, the DOB automatically issues a separate unreviewable violation. A respondent is ineligible for a permit until he or she pays the unreviewable penalty for having work done without a permit, which is separate from any penalty imposed at the hearing. N.Y.C. Admin. Code § 28-213.3.

65.     During the time that a respondent waits for a permit, he or she is subject to an unlimited amount of failure to correct or failure to comply penalties and, depending on the infraction, may also accumulate daily penalties.

66.     Failing to correct the violation is an independent violation on top of the initial violation. N.Y.C. Admin. Code § 28-202.2.

*Challenging the Notice of Violation*

67.     If the respondent wishes to contest the notice of violation for a reviewable violation, they must appear at the ECB/OATH hearing. At the hearing, the ECB/OATH hears from both the DOB and the respondent and issues a decision. 48 R.C.N.Y. § 1-51.1.

68.     Hearings need not comply with the rules of evidence or civil practice. 48 R.C.N.Y. § 1-46.

69.     The DOB has the burden of proving the factual allegations by a preponderance of the evidence, and the notice of violation, if sworn to under oath or affirmed under penalty of perjury, is admitted as prima facie evidence of the facts stated in it. 48 R.C.N.Y. § 6-12(a), (b). In other words, although it may appear that the City bears the burden of proving the violation, the DOB's notice essentially satisfies that burden, and the respondent must then prove he or she did not commit the violation.

70.     After the hearing, the hearing officer issues a decision with findings of fact and conclusions of law; if she rules against the respondent, she imposes a penalty on the respondent. 48 R.C.N.Y. § 6-17.

71.     For reviewable violations, a respondent must pay all fines within 30 days of the decision or within 35 days of the decision if it was mailed. 48 R.C.N.Y. § 6-18.

*Appealing from the ECB/OATH Hearing*

72. Parties may appeal the decision following the ECB/OATH hearing, first within the ECB and then to New York state courts, albeit in a limited capacity.

73. Either party may appeal within 30 or 35 days of the decision to the ECB/OATH's Appeals Unit. 48 R.C.N.Y. § 6-19(a)(1)(i). The Appeals Unit's review is primarily based on a closed record, though it will allow dispositive government records to be introduced if they establish a material fact or defense. 48 R.C.N.Y. § 6-19(f). The Appeals Unit determines whether the hearing officer's factual findings are supported by a preponderance of the evidence in the record and whether the hearing officer's determinations and penalties imposed are supported by law. 48 R.C.N.Y. § 6-19(g).

74. A respondent seeking the Appeals Unit's review must pay the full penalties owed before filing an administrative appeal unless they meet one of a handful of narrow exceptions: (i) the respondent receives a financial hardship waiver; (ii) the respondent receives another waiver; (iii) the respondent opts for community service in lieu of a monetary penalty at the hearing; or (iv) the respondent enters into a payment plan with the DOB. 48 R.C.N.Y. § 6-19(a)(1)(iii). Upon information and belief, option (iii) is not available for reviewable violations in ECB/OATH proceedings.

75. A respondent seeking a hardship waiver must request it at the time of filing the appeal and provide evidence to support the request. 48 R.C.N.Y. § 6-19(b).

76. The Chief Administrative Law Judge for ECB/OATH or her designee has sole discretion to grant or deny a waiver due to financial hardship. 48 R.C.N.Y. § 6-19(b). There are no standards in any City ordinance, code provision, or rule to guide the Chief Judge or her designee in exercising such discretion, meaning that the decision to grant such a waiver is entirely subjective.

77.     If the Appeals Unit rules for respondent, it will order repayment of penalties that the respondent has paid to the government "where appropriate." 48 R.C.N.Y. § 6-19(g)(2). There is no definition in any City ordinance, code provision, or rule that sets out when repayment is, or is not, "appropriate."

78.     There is no requirement that the City pay interest on any funds it repays under this provision.

79.     The Appeals Unit "has the power to affirm, reverse, remand or modify the decision appealed from," 48 R.C.N.Y. § 6-19(g)(1), and an appeal thus may result in greater penalties than the initial penalties imposed by the DOB.

80.     Decisions from the Appeals Unit may be appealed to New York state court by way of Article 78 of the New York Civil Practice Law and Rules. 48 R.C.N.Y. § 6-19(g)(2).

81.     Article 78 proceedings provide for limited judicial review of final administrative decisions. N.Y. C.P.L.R. § 7801.

82.     A respondent must first seek review of the decision of the ECB/OATH Hearing Officer before the Appeals Unit before he or she can seek judicial review pursuant to Article 78. *Young Men's Christian Ass'n v. Rochester Pure Waters Dist.*, 37 N.Y.2d 371, 375, 372 N.Y.S.2d 633, 636, 334 N.E.2d 586, 588 (1975) (a respondent must exhaust all possibilities of obtaining relief through administrative channels before appealing to the courts); *Irizarry v. New York City Police Dep't*, 688 N.Y.S.2d 541, 543, 260 A.D.3d 269 (1st Dept. 1999) (same).

83.     In an Article 78 proceeding, the respondent can only challenge the government's application of a legislative enactment and not the constitutionality of the legislation itself. *Bd. of Educ. of Belmont Cent. Sch. Dist. v. Gootnick*, 404 N.E.2d 1318, 1319 (N.Y. 1980).

84.     The respondent may challenge the constitutionality of a legislative enactment by an action for declaratory judgment filed with the Article 78 proceeding. *Price v. New York City Bd. of Educ.*, 837 N.Y.S.2d 507, 512 (N.Y. Sup. Ct. 2007)*.*

*Effects of a Violation*

85.     Failing to resolve a notice of violation or attend the ECB/OATH hearing results in default. 48 R.C.N.Y. § 6-20(a). Without any further notice and in lieu of a hearing, ECB/OATH will deem all facts alleged in the summons admitted, find the respondent in violation, assess penalties, and mail the decision to the respondent. 48 R.C.N.Y. § 6-20(b), (d). Default penalties can be up to five times higher than the standard penalty. *See* 1 R.C.N.Y. § 102-01(k).

86.     All notices of violation are public information and, once issued, the City places the information online on the Buildings Information System (BIS).[6] BIS is a database that can be searched by address and includes a host of information about property, such as complaints, DOB violations, ECB/OATH violations, certificates of occupancy, particular restrictions a property may face due to its location, and so on. Banks and title companies check the information when conducting property title searches, and open violations can prevent an owner from selling or refinancing.[7]

87.     The DOB will not issue new or amended certificates of occupancy when DOB violations are open.[8]

88.     Amounts not paid within 30 days of the date of entry are subject to interest (at the same rate as unpaid real property taxes). N.Y.C. Admin. Code § 28-204.6.5. All unpaid

---

[6] Available at http://a810-bisweb.nyc.gov/bisweb/bispi00.jsp.
[7] *See* N.Y.C. Buildings, Presentation: Resolving OATH Violations, https://www1.nyc.gov/site/buildings/safety/presentation-resolving-ecb-violations.page (last visited Nov. 6, 2020).
[8] *See* N.Y.C. Buildings, Department of Buildings Violations, https://www1.nyc.gov/site/buildings/safety/dob-violations.page (last visited Nov. 6, 2020).

judgments, including any assessed interest, become liens upon the property. N.Y.C. Admin. Code §§ 28-204.6.2, 28-204.6.6. A narrower category of offenses become tax liens on the property. N.Y.C. Admin. Code § 28-204.6. The government may force the sale of the property to enforce its lien. N.Y.C. Admin. Code § 28-204.6.6.

89.    Money collected by the DOB goes to the City's General Fund, meaning that the more penalties the City imposes and collects directly benefits the City's institutional interest in improving its financial condition.

90.    Upon information and belief, small property owners make up a larger percentage of the property owners receiving notices of violations than all other kinds of respondents, such as large developers and owners of midtown Manhattan skyscrapers.

91.    Upon information and belief, the City has prioritized issuing notices of violation to small property owners in general, and homeowners in particular, because these respondents are unfamiliar with the City's complex and opaque administrative prosecution procedures, which often lead to respondents inadvertently accumulating additional fines.

92.    In particular, the fact that "correcting" a violation means both fixing the cause of the violation *and* filing an affidavit with the DOB certifying that the violation was corrected leaves many respondents exposed to additional penalties and loss of the ability to mitigate the penalties the DOB has issued to them.

**The DOB Prosecutes Mr. Corsini**

93.    In 2016, Mr. Corsini decided that, like his father and grandfather before him, he wanted to have a pigeon coop on the roof of his home.

94.    He began to construct a pigeon coop on the roof of his home.

95.     A neighbor complained to the DOB not because of any danger caused by the coop, but because the neighbor was concerned that people at the coop could see into their backyard.

96.     A DOB inspector visited his property, and the DOB issued a notice of violation to him on September 20, 2016, of a Class 1 violation for performing work without a permit in violation of New York City's Administrative Code Section 28-105.1.

97.     The standard penalty today for a Class 1 violation for performing work without a permit in violation of Section 28-105.1 is $2,500 per violation.

98.     In 2016, the standard penalty for a Class 1 violation for performing work without a permit in violation of Section 28-105.1 was $1,600.

99.     Because the coop spanned both houses of the duplex, the DOB issued two notices of violation for the coop. Both notices were Class 1 violations of Section 28-105.1, and both contained summonses for ECB/OATH hearings in January 2017.

100.     Mr. Corsini then tried to bring the coop into compliance. He hired an architect, who submitted a request for a permit and plans to the DOB. The DOB rejected all of Mr. Corsini's attempts to bring the coop into compliance, citing, among other reasons (which the DOB calls "objections"), the fact that the coop did not have sprinklers. However, the DOB refused to specify what type of sprinkler system would meet this demand. The DOB added new requirements each time Mr. Corsini cured the stated DOB objection and complied with the DOB's requirements.

101.     While Mr. Corsini was working to bring his coop into compliance, the DOB returned to his house carrying the notice of violation pad and a pen at the ready.

102.   The DOB issued Mr. Corsini two violations on November 19, 2016. The first was a Class 2 violation for failing to comply with the commissioner's order from the September 20, 2016 violation and failing to file a certificate of correction, in violation of New York City's Administrative Code Section 28-204.4. The other violation was a Class 1 violation for failing to comply with the commissioner's order from the September 20, 2016 violation and failing to file a certificate of correction, in violation of Sections 28-201.1 and 28-204.4. Both contained summonses for hearings in January 2017.

103.   In 2016, the standard penalty for Class 2 violations of Section 28-204.4 was $800, while the standard penalty for Class 1 violations of Section 28-201.1 was $2,400.

104.   Today, the standard penalty for Class 2 violations of Section 28-204.4 is $1,250, while the standard penalty for Class 1 violations of Section 28-201.1 is $2,500.

105.   Ultimately, Mr. Corsini decided to take the coop down. Putting sprinklers on the coop was prohibitively expensive, and he concluded it simply was not worth the continued hassle.

106.   He submitted certificates of corrections for the reviewable violations, but the DOB initially disapproved some of them.

107.   The two September 20, 2016 violations reflect, after an initial disapproval, that the DOB accepted the certificate and deemed Mr. Corsini compliant on December 19, 2017.

108.   The remaining violations reflect, after initial disapprovals, that the DOB accepted the certificates and deemed Mr. Corsini compliant on February 16, 2018.

109.   All told, the DOB issued Mr. Corsini two unreviewable violations and six reviewable violations with ECB/OATH hearings summonses. The unreviewable violations each carried $1,500 penalties. Mr. Corsini's reviewable violations subjected him to standard penalties

totaling approximately $8,000. Altogether, Mr. Corsini faced approximately $11,000 in penalties for building a pigeon coop.

110. Mr. Corsini hired an attorney to help navigate the ECB/OATH system.

111. Represented by his attorney, Mr. Corsini was able to mitigate the penalties for the reviewable violations at ECB/OATH. Ultimately, the City issued a written decision demanding that he pay an $800 penalty per reviewable violation, for a total of $4,800.

112. New York law ostensibly gave Mr. Corsini the option to appeal his reviewable violations to the ECB Appeals Unit and then in an Article 78 proceeding. Had Mr. Corsini contested the reviewable violations at the ECB/OATH hearings and lost, however, he would have faced a penalty for the reviewable violations of approximately $8,000—or more if the Appeals Unit modified the penalty by increasing it. This would be in addition to the $3,000 in unreviewable violation penalties the City required him to pay without an opportunity to challenge them.

113. Mr. Corsini did not appeal the violations, however, because, in part, he would have first had to pay the entire amount of the reviewable penalties before his appeal would be considered and because an appeal could expose him to greater penalties than those already imposed by the DOB.

114. The City's rules also ostensibly gave Mr. Corsini the option to request that the Appeals Unit waive the prior payment requirement under the hardship exception in 48 R.C.N.Y. § 6-19(b). Mr. Corsini believes this would have been futile in his case because, while he is not wealthy, he is also not impoverished. Moreover, given the lack of guidance as to what constitutes "financial hardship," and the fact that the determination of whether this waiver should be granted

lies entirely in the subjective decision of a single administrative law judge, such an effort would have been a waste of further time and money.

115.    Mr. Corsini thus found himself in the dilemma faced by many middle-class respondents in administrative proceedings—not rich enough to bear the entire penalty without real financial pain, but not poor enough to qualify for a hardship exception.

116.    Upon information and belief, Mr. Corsini did not believe he qualified for a waiver of his penalties pursuant to 48 R.C.N.Y. § 6-19(a)(1)(iii)(B).

117.    Mr. Corsini could not participate in community service in lieu of the monetary penalty pursuant to 48 R.C.N.Y. § 6-19(a)(1)(iii)(C) because that option was not available to him.

118.    The payment plan set out in 48 R.C.N.Y. § 6-19(a)(1)(iii)(D) requires the respondent to pay the entire fee amount, albeit in installments. This option thus required him to pay the full amount of the fees as a condition on his ability to appeal.

119.    Rather than pay the full amount and appeal and expose himself to even greater penalties, Mr. Corsini instead paid the mitigation-reduced penalty amounts. Put another way, Mr. Corsini was able to reduce his penalties by $3,200 by foregoing his right to appeal.

120.    But for the requirement to pay his entire fee amount prior to appealing, he would have appealed the Hearing Officer's decision to the ECB/OATH Appeals Unit.

121.    Even if Mr. Corsini had appealed, he would not have been able to challenge the constitutionality of the process he faced.

122.    There are changes Mr. Corsini would like to make to his home. Considering the DOB's enforcement practices, however, there is a substantial likelihood that were he to make those changes, he would become subject to the DOB's unconstitutional processes again.

123. Mr. Corsini has well-established and fundamental property rights in his home and his earnings, income, and capital.

124. The City interfered with and deprived Mr. Corsini of these rights by, among other things, issuing unreviewable violations to him that he could not contest, appeal, or have reviewed by a court of competent jurisdiction and leaving him with only the option to pay or default; not providing any mechanism or requirement that the City refund fines paid pursuant to unreviewable violations; failing to provide a forum for consideration of the reviewable violations that followed New York's rules of evidence or civil practice, or similar rules and procedures; conditioning his ability to obtain administrative review of the reviewable violations on the full payment of the fines the City imposed on him; exposing him to greater penalties if he did appeal; conditioning his ability to obtain judicial review of his reviewable penalties on his exhaustion of administrative remedies which themselves were conditioned on the full payment of the fines the City imposed on him; failing to provide a forum for the consideration of constitutional questions and an avenue for meaningful appellate review; fining him while he sought a permit from the City; continuing to issue multiple notices of violation for a single condition; seeking to maximize fines when these fines benefit the City by directly increasing the City's general treasury; and failing to provide adequate notice of what was necessary to come into compliance, which led him to accumulate multiple additional penalties.

125. The City's process risks erroneous deprivation of the rights of Mr. Corsini and all property owners in New York City.

126. The City could correct some of these problems by adding additional safeguards, among other things, subjecting every violation to review by a neutral arbiter; demanding that the hearings comport with New York's rules of evidence or civil practice; providing an avenue for

meaningful appellate review that need not be preceded by payment in full of penalties assessed; stopping or limiting the practice of imposing multiple fines on property owners for the same violation; and many others.

127.     The City's deprivations of Mr. Corsini's rights were done without the process due him under the Fourteenth Amendment to the U.S. Constitution.

128.     The actions and practices described in this Complaint are pervasive in New York City and affect hundreds, if not thousands, of New York City residents. Plaintiff therefore expressly reserves the right to amend this Complaint to add additional plaintiffs and causes of action, including allegations that the City's actions have caused harm to others similarly situated to Mr. Corsini and to seek to certify a class of such individuals harmed by the City.

## V.     CAUSE OF ACTION

### Violation of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution via 42 U.S.C. § 1983

129.     Plaintiff incorporates by reference the preceding allegations of this Complaint.

130.     The City, acting under color of law, caused Plaintiff to be deprived of his property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution.

131.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires that, before a person may be deprived of his or her property, the person be provided notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

132.     The City had a duty under the Fourteenth Amendment to the U.S. Constitution to provide Mr. Corsini with notice and a meaningful opportunity to be heard prior to depriving him of his property and to conduct the City's administrative processes in accordance with due process.

133. The City violated its duty to ensure due process by denying Mr. Corsini a fair or meaningful opportunity to be heard, thereby creating an unreasonable risk of erroneous deprivation.

134. By requiring full prepayment of a fine associated with a reviewable violation to access an administrative appeal and then judicial review, the City effected a pre-hearing deprivation of Plaintiff and denied due process to him.

135. Plaintiff possessed a fundamental property interest protected by the Fourteenth Amendment to the U.S. Constitution, in his home, earnings, income, and capital.

136. This interest is one of historical and continuing importance.

137. Defendants interfered with this interest possessed by Mr. Corsini by, among other things, (i) issuing unreviewable violations to him that he could not contest, appeal, or have reviewed by a court of competent jurisdiction and leaving him with only the option to pay or default; (ii) failing to mandate the City's return of any fines collected pursuant to unreviewable violations; (iii) failing to provide a forum for consideration of the reviewable violations that followed New York's rules of evidence or civil practice, or similar rules and procedures; (iv) failing to provide a forum for the consideration of constitutional questions and an avenue for meaningful appellate review; (v) fining him while he sought a permit from the City; (vi) continuing to issue multiple notices of violation for a single condition; (vii) seeking to maximize fines when these fines benefit the City by directly increasing the City's general treasury; (viii) conditioning his ability to access both administrative appeals and judicial review on the payment of all fines assessed against him; (ix) failing to provide adequate notice of what was necessary to come into compliance, which led him to accumulate multiple additional penalties; and (x) otherwise failing to provide process that guarded against the risk of erroneous deprivation.

138. In so doing, this deprived Mr. Corsini of the process due to him under the Fourteenth Amendment to the U.S. Constitution.

139. The City also violated its duty to provide due process by enforcing, collecting, and retaining fines issued to Mr. Corsini without due process.

140. The City had the ability to provide due process to Mr. Corsini in conformity with the Fourteenth Amendment.

141. The City's governmental interests cannot justify the violation of Mr. Corsini's due process rights.

142. The burden of providing sufficient process to Mr. Corsini did not outweigh his interest in a fair, open, and accurate process.

143. Any appellate review available to Plaintiff was constitutionally deficient and cannot compensate for or cure the lack of meaningful pre-deprivation process.

144. The City's behavior was arbitrary and shocking to the conscience and was so brutal and offensive as to not comport with traditional ideas of fair play and decency.

145. The City had no legitimate governmental interest in depriving Mr. Corsini of his property without due process.

146. The City's failure to provide sufficient process to Mr. Corsini was conducted pursuant to a policy, practice, or custom that violated the Fourteenth Amendment to the U.S. Constitution.

147. The City has acted under color of state law in violating Mr. Corsini's rights pursuant to the Fourteenth Amendment to the U.S. Constitution.

148. As a direct and proximate result of the City's actions, Mr. Corsini suffered irreparable injury to his constitutional rights.

149.     The City could have provided additional safeguards to its process that would have reduced the due process violations it imposed on Mr. Corsini.

## VI.     PRAYER FOR RELIEF

150.     WHEREFORE, Plaintiff prays for relief as follows:

151.     For a declaration that the City's systemic policies, practices, and customs, on their face and as applied to Mr. Corsini, violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;

152.     For an order enjoining the application and enforcement of the practices described in this Complaint as a violation of due process;

153.     For an injunction in favor of Mr. Corsini requiring the City to provide restitution, with interest, to Mr. Corsini for all penalties, fines, and fees issued pursuant to constitutionally deficient procedures;

154.     For an award of $1 in nominal damages for the due process violations described in this Complaint;

155.     For an award of attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable statute or rule, or in equity; and

156.     For such other and further relief as this Court may deem just and proper.

DATED: March 3, 2021

Respectfully Submitted,

S/William R. Maurer
William R. Maurer (Wa. Bar No. 25451)*
INSTITUTE FOR JUSTICE
600 University Street, Suite 1730
Seattle, WA 98101
P. (206) 957-1300
E. wmaurer@ij.org

Diana K. Simpson (Co. Bar No. 43591)*
Jaba Tsitsuashvili (DC Bar No. 1601246)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
P. (703) 682-9320
F. (703) 682-9321
E. diana.simpson@ij.org; jtsitsuashvili@ij.org

Jaime Lathrop (NY Bar No. JL-4215)
LAW OFFICES OF JAIME LATHROP, P.C. 182A
26th Street, Suite 2R
Brooklyn, NY 11232
P. (718) 857-3663
E. jlathrop@lathroplawpc.com

*Attorneys for Plaintiff*

*\*Admitted pro hac vice*