UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------

JOSEPH CORSINI,

                            Plaintiff,              **MEMORANDUM & ORDER**
                                                            20-CV-5459 (MKB)

          v.

CITY OF NEW YORK,

                            Defendant.

--------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Joseph Corsini commenced the above-captioned action on November 10, 2020,

against Defendant the City of New York (the "City"). (Compl., Docket Entry No. 1.) Plaintiff

filed an amended complaint on March 3, 2021, asserting a single claim against the City for

violation of his due process protections under the Fourteenth Amendment pursuant to 42 U.S.C.

§ 1983. (Am. Compl., Docket Entry No. 18.) Plaintiff alleges that after he began constructing a

pigeon coop on his roof without a permit, the Department of Buildings (the "DOB") prosecuted

Plaintiff in administrative proceedings that lacked fundamental procedural protections in

violation of Plaintiff's due process rights. (*Id.* ¶¶ 3–9.)

        Defendant moves to dismiss the Amended Complaint as time barred and for failure to

state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Mot. to

Dismiss ("Def.'s Mot."), Docket Entry No. 24; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s

Mem."), Docket Entry No. 26.) For the reasons set forth below, the Court grants Defendant's

motion, dismisses the Amended Complaint, and grants Plaintiff leave to file a second amended

complaint within thirty days.

## I.   Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purpose of deciding Defendant's motion.

### a.   The City's building and construction code enforcement process

The DOB administers the City's construction code (the "Construction Code"), which includes the City's building code (the "Building Code"), in addition to reviewing and issuing permits and licenses, and enforcing compliance with the Construction Code.  (Am. Compl. ¶ 17.) The DOB's Administrative Enforcement Unit processes summonses and violations issued by the DOB's inspection and safety and enforcement units and prosecutes summonses and violations before the City's Office of Administrative Trials and Hearings (the "OATH"), Hearings Division — the central administrative tribunal for the City — which holds hearings on Environmental Control Board ("ECB") cases ("ECB/OATH hearings").  (*Id.* ¶¶ 18–20.)

### i.   Construction Code violations

Construction Code violations are divided into three classifications: immediately hazardous (Class One), major (Class Two), and lesser (Class Three).  (*Id.* ¶ 22.)  The classification of a violation dictates the level of penalties that apply and the options available to the respondent.  (*Id.* ¶ 23.)  The penalty amount is established by law — OATH hearing officers do not have the discretion to alter or waive a penalty amount.  (*Id.* ¶ 25.)  Penalties for Class One violations range from $1,000 to $25,000.  (*Id.* ¶ 24.)

In contrast to other types of violations, "work without a permit — [Plaintiff's] initial violation — can be deemed any class of penalty, either Class [One], [Two], or [Three]."  (*Id.* ¶ 26.)  The initial fine for "construction work without permit violations" designated as Class One

is $2,500.  (*Id.* ¶ 27.)  The DOB considers each day a violation continues to exist as a "separate and distinct offense."  (*Id.* ¶ 28.)

Plaintiff contends that violations issued by the DOB can be categorized as reviewable and unreviewable violations.[1]  (*Id.* ¶ 29.)  In support, Plaintiff argues that Construction Code violations may be reviewable in that they may be challenged before the OATH or they may be unreviewable, such that they must be resolved directly through the DOB and are "not reviewable at ECB/OATH hearings or by any other neutral adjudicator."  (*Id.* ¶¶ 29–31.)  In the event "a property owner receives a reviewable violation for work without a permit, the DOB automatically issues a separate unreviewable violation."  (*Id.* ¶ 64.)  Until the penalty associated with the unreviewable violation is paid, the respondent remains ineligible for a permit to resolve the reviewable violation.  (*Id.*)  The penalty associated with the unreviewable violation is imposed separately and distinctly from any penalty imposed pursuant to the underlying reviewable violation.  (*Id.*)  While the respondent waits for the permit to be issued, the respondent is "subject to an unlimited amount of failure to correct or failure to comply penalties and, depending on the infraction, may also accumulate daily penalties."[2]  (*Id.* ¶ 65.)  The penalty for failing to correct the violation is imposed in addition to any penalty imposed for the initial violation.  (*Id.* ¶ 66.)

---

[1]  The City disputes the classification of certain violations as "unreviewable" and argues that the "civil penalties" assessed against Plaintiff were "subject to administrative and judicial review" as they "are not imposed in isolation" but rather "are predicated upon a previously issued summons" such that "their enforceability turns on the validity of the underlying summons, which . . . is subject to administrative challenge and judicial review via an Article 78 proceeding."  (Def.'s Mem. 9 (citing N.Y. Admin. Code § 28-219.1).)

[2]  Although the amount of time a City agency takes to issue a permit varies, Plaintiff alleges that "it takes around two months for the DOB to issue a construction permit to respondents familiar with the City's process" and that the "DOB may consider a permit for up to four-to-six months."  (Am. Compl. ¶ 63.)

### 1. Unreviewable violations

Plaintiff argues that neither the City Administrative Code (the "Code") nor the New York City Rules and Regulations (the "Rules") describe a process by which an unreviewable violation may be reviewed by a neutral adjudicator, except for where the DOB requests that the City's attorney institute legal proceedings to compel correction against a non-compliant respondent. (*Id.* ¶ 30.)  He contends that there is no process by which a respondent may request review or challenge an unreviewable violation before remitting payment to the DOB, (*id.* ¶¶ 33–35), and that there is "no mechanism in the City's laws, ordinances, rules, or policies that requires the City to return any penalties paid pursuant to unreviewable violations even when any related reviewable violations have been found to be invalid or withdrawn by the City," (*id.* ¶ 37).

### 2. Reviewable violations

Upon determining that there has been a reviewable Code violation, the DOB issues a notice of violation, initiating the enforcement process.  (*Id.* ¶ 39.)  The notice provides (1) the hearing date; (2) an order to correct and certify; (3) "the violating conditions observed along with the infraction code, class, standard penalty, maximum penalty, violation details, and remedy"; and (4) instructions for the recipient.  (*Id.*)  The notice of violation informs the person responsible for the building of the violation, "acts as a summons to an ECB/OATH hearing," and "orders the respondent to correct the violation."  (*Id.* ¶ 40.)

### A. Order to correct and certify

The notice of violation includes the "commissioner's order to correct the violating condition and file a certification with the DOB that the condition has been corrected."  (*Id.* ¶ 41.)  Correction is not defined in the violation or in any publicly available documents, but it can be understood to entail "physically fixing the violation but also (i) filing a notarized affidavit with

the DOB certifying that the violation has been corrected, and (ii) paying any unreviewable

violation civil penalties." (*Id.* ¶ 43.)  In order to certify the correction, the DOB requires that the

respondent "include documentary proof and swear under penalty of perjury that they corrected

the violation." (*Id.*)  However, if the violation is dismissed at the ECB/OATH hearing, the

respondent is not required to certify the correction. (*Id.* ¶ 44.)

     The Construction Code provides that corrections must be completed quickly, and

immediately hazardous (Class One) violations must be corrected "forthwith." (*Id.* ¶ 45.)  The

failure to correct and to certify the correction of a violation constitutes a new violation of the

Construction Code, subject to additional penalties. (*Id.* ¶ 46.)  The penalty for failing to certify

the correction of an immediately hazardous condition ranges from $1,500 to $5,000, payable

directly to the DOB. (*Id.* ¶ 47.)

### B.   Resolving a reviewable violation

     Once the DOB issues the notice of violation triggering the enforcement process, the

respondent may either admit to the violation or contest the violation at a hearing before the

OATH Hearings Division. (*Id.* ¶¶ 49–50.)

### (1)   Admitting the notice of violation

     To admit the notice of violation, a respondent may adopt one of four routes available:

(1) cure; (2) stipulation and payment; (3) admission and payment; or (4) mitigation and payment.

(*Id.* ¶ 49.)  All four options require the respondent to fix the violation and file a certificate of

correction with the DOB. (*Id.* ¶ 50.)  The available route for remedy is dictated by the

classification of the violation. (*Id.* ¶ 51.)  New York City Rule 102-01(k) — "classification of

particular violations" — provides a table that lists specific violations, the classification, the

applicable resolution option(s) and the applicable penalties. (*Id.* (citing N.Y.C., N.Y., Rules, Tit.

1, § 102-01).)  For example, "performing work without a permit in violation of section 28-105.1," classified as a Class One violation, may not be resolved through "cure nor stipulation" and payment, and "draws a standard penalty of $2,500 and a maximum penalty of $25,000."  (*Id.* ¶ 52.)

By fixing the violation and certifying to the DOB that the violation has been corrected before the scheduled ECB/OATH hearing and within forty days from the notice of violation, a respondent can cure the violation and avoid any penalty.  (*Id.* ¶ 53.)  A stipulation permits the "respondent to admit the violation and face a reduced penalty with an extended time to fix the violation."  (*Id.* ¶ 55.)  However, no Class One violations may be resolved through cure and a Class One violation for "work without a permit" may not be resolved through stipulation and payment.  (*Id.* ¶¶ 54, 56.)  The option of "admission and payment" allows the respondent to admit to the violation and pay by mail or online, without the need for a hearing,[3] but this option is not an available remedy for hazardous violations.  (*Id.* ¶ 57.)

The final remedy, mitigation, may occur when the respondent represents at the ECB/OATH hearing that they "(i) corrected all the violations listed in the summons, (ii) prior to the first hearing, and (iii) that the corrections were acceptable to the DOB."  (*Id.* ¶ 60.)  Where successful, mitigation can reduce the penalty by half the amount that otherwise would have been imposed at the hearing for the violation.  (*Id.*)  Following the hearing, the respondent must submit a certificate of correction to the DOB.  (*Id.*)  To mitigate a violation, the respondent must obtain permits for any necessary work prior to the hearing.  (*Id.* ¶ 62.)

---

[3]  Although the option of resolving a violation through "admission and payment" does not appear in the Code or the Rules, Plaintiff alleges that it does appear in DOB's guidance documents.  (*Id.* ¶ 57.)

**(2)   Challenging the notice of violation**

To contest the notice of violation for a reviewable violation, the respondent must appear

at the ECB/OATH hearing.  (*Id.* ¶ 67.)  The OATH will hear from both the DOB and the

respondent, with the burden on the DOB to prove the factual allegations by a preponderance of

the evidence.  (*Id.* ¶¶ 67, 69.)  ECB/OATH hearings are not required to comply with the rules of

evidence or civil practice.  (*Id.* ¶ 68.)  If the notice of violation is sworn to under oath or affirmed

under penalty of perjury, the notice is admitted as prima facie evidence of the facts stated in the

notice.  (*Id.* ¶ 69.)  Following the hearing, the hearing officer issues a decision with findings of

fact and conclusions of law.  (*Id.* ¶ 70.)  For reviewable violations, a respondent must pay any

fines imposed by the hearing officer within thirty days or within thirty-five days if the hearing

officer mails the decision.  (*Id.* ¶ 71.)

**3.   Appealing the decision rendered after the OATH hearing**

Either party has the right to appeal the decision following the ECB/OATH hearing to the

ECB/OATH's Appeals Unit.  (*Id.* ¶ 73.)  Before a respondent can seek judicial review pursuant

to Article 78 of the New York Civil Practice Law and Rules (an "Article 78 proceeding"), a

respondent must first seek review of the decision of the ECB/OATH Hearing Officer before the

Appeals Unit.  (*Id.* ¶ 82 (first citing *Young Men's Christian Ass'n v. Rochester Pure Waters

Dist.*, 37 N.Y.2d 371, 375 (1975); and then citing *Irizarry v. N.Y.C. Police Dep't*, 688 N.Y.S.2d

541, 543 (App. Div. 1999)).)  The Appeals Unit considers "whether the hearing officer's factual

findings are supported by a preponderance of the evidence" and "whether the hearing officer's

determinations and penalties imposed are supported by law."  (*Id.* ¶ 73.)  Before filing an appeal,

the respondent must pay the full amount of penalties owed unless one of the following

exceptions applies: "(i) the respondent receives a financial hardship waiver; (ii) the respondent

receives another waiver; (iii) the respondent opts for community service in lieu of a monetary

penalty at the hearing; or (iv) the respondent enters into a payment plan with the DOB." (*Id.*

¶ 74.) The third option is not available for reviewable violations in ECB/OATH proceedings.

(*Id.*) To obtain a hardship waiver the respondent must request the waiver at the time of filing the

appeal and provide evidence in support of the request.[4] (*Id.* ¶ 75.)

In the event the Appeals Unit rules for respondent, it will order repayment of penalties

that the respondent has paid to the government "where appropriate,"[5] but the City is not required

to pay interest on repaid penalties. (*Id.* ¶¶ 77–78.) The Appeals Unit "has the power to affirm,

reverse, remand or modify the decision appealed from," and therefore, an appeal may result in

greater penalties than the initial penalties imposed by the DOB. (*Id.* ¶ 79 (quoting N.Y.C., N.Y.,

Rules, Tit. 48, § 6-19(g)(1)).) After the Appeals Unit issues a decision, either party may appeal

to state court pursuant to Article 78. (*Id.* ¶ 80.) However, Article 78 proceedings only provide

for limited judicial review of final administrative decisions.[6] (*Id.* ¶ 81.)

### ii. Effects of a violation

Failing to resolve a notice of violation or attend the ECB/OATH hearing results in

default, such that "[w]ithout any further notice and in lieu of a hearing, ECB/OATH will deem

---

[4] Plaintiff contends that "[t]he Chief Administrative Law Judge for ECB/OATH or her designee" has sole discretion whether to grant a financial hardship waiver, but there are "no standards in any City ordinance, code provision, or rule to guide the Chief Judge or her designee in exercising such discretion, meaning that the decision to grant such a waiver is entirely subjective." (*Id.* ¶ 76.)

[5] There is "no definition in any City ordinance, code provision, or rule that sets out when repayment is, or is not, 'appropriate.'" (*Id.* ¶ 77)

[6] If the respondent seeks to challenge the constitutionality of a legislative enactment, the respondent must file a motion for declaratory judgment with the Article 78 proceeding. (*Id.* ¶ 84 (citing *Price v. N.Y.C. Bd. of Educ.*, 837 N.Y.S.2d 507, 512 (N.Y. Sup. Ct. 2007)).)

all facts alleged in the summons admitted, find the respondent in violation, assess penalties, and mail the decision to the respondent." (*Id.* ¶ 85.) Penalties imposed pursuant to default "can be up to five times higher than the standard penalty." (*Id.*)

Notices of violation are public information — once issued, the City publishes the information online on the Buildings Information System ("BIS"), "a database that can be searched by address and includes a host of information about [the] property, such as complaints, DOB violations, ECB/OATH violations, certificates of occupancy, particular restrictions a property may face due to its location, and so on." (*Id.* ¶ 86.) When conducting property title searches, banks and title companies will check the BIS, and "open violations can prevent an owner from selling or refinancing." (*Id.*) In addition, the DOB will not issue new or amended certificates of occupancy when DOB violations are unresolved. (*Id.* ¶ 87.)

Penalty funds collected by the DOB go to the City's general fund. (*Id.* ¶ 89.) Any penalty amount unpaid for a period of thirty days from the "date of entry" is "subject to interest (at the same rate as unpaid real property taxes)." (*Id.* ¶ 88.) In addition, any "unpaid judgments, including any assessed interest, become[s] [a] lien[] upon the property," and "[t]he government may force the sale of the property to enforce its lien." (*Id.*) Plaintiff alleges that "small property owners make up a larger percentage of the property owners receiving notices of violations than all other kinds of respondents," (*id.* ¶ 90), as the City prioritizes "issuing notices of violation to small property owners in general, and homeowners in particular, because these respondents are unfamiliar with the City's complex and opaque administrative prosecution procedures, which often lead to respondents inadvertently accumulating additional fines," (*id.* ¶ 91).

###### b.   DOB's prosecution of Plaintiff

In 2016, Plaintiff began constructing a pigeon coop on the roof of his home.  (*Id.* ¶¶ 93–94.)  Plaintiff's neighbor complained to the DOB and a DOB inspector inspected Plaintiff's property.  (*Id.* ¶¶ 95–96.)  Following this inspection, on September 20, 2016, the DOB issued Plaintiff two Class One violation notices for performing work without a permit, in violation of New York City's Administrative Code Section 28-105.1, "because the coop spanned both houses of the duplex."  (*Id.* ¶¶ 96, 99.)  In 2016, "[t]he standard penalty for a Class [One] violation for performing work without a permit in violation of Section 28-105.1 was $1,600."[7]  (*Id.* ¶ 98.)  Both notices of violation contained summonses for ECB/OATH hearings scheduled for January of 2017.  (*Id.* ¶ 99.)

In an attempt to bring the coop into compliance, Plaintiff hired an architect who submitted a request for a permit and plans to the DOB.  (*Id.* ¶ 100.)  However, the DOB rejected Plaintiff's proposed plans, "citing, among other reasons . . . , the fact that the coop did not have sprinklers" while refusing "to specify what type of sprinkler system" was required and "add[ing] new requirements each time [Plaintiff] cured the stated DOB objection."  (*Id.*)  Then, on November 19, 2016, while Plaintiff was still working to bring the coop into compliance, the DOB issued Plaintiff two new violations: a Class Two violation for "failing to comply with the commissioner's order from the September 20, 2016 violation and failing to file a certificate of correction, in violation of New York City's Administrative Code Section 28-204.4," and a Class One violation for "failing to comply with the commissioner's order from the September 20, 2016 violation and failing to file a certificate of correction, in violation of Sections 28-201.1 and 28-

---

[7]  Currently, the standard penalty associated with "a Class [One] violation for performing work without a permit in violation of Section 28-105.1 is $2,500 per violation."  (*Id.* ¶ 27.)

204.4." (*Id.* ¶¶ 101–102.)  Both the September and November of 2016 violation notices

contained summonses for hearings in January of 2017.  (*Id.* ¶ 102.)  In 2016, "the standard

penalty for Class [Two] violations of Section 28-204.4 was $800, while the standard penalty for

Class [One] violations of Section 28-201.1 was $2,400."[8]  (*Id.* ¶ 103.)  Eventually, Plaintiff

decided to take down the pigeon coop because "[p]utting sprinklers on the coop was

prohibitively expensive, and . . . not worth the continued hassle." (*Id.* ¶ 105.)  After dismantling

the coop, Plaintiff submitted certificates of correction for the reviewable violations.  (*Id.* ¶ 106.)

In total, "the DOB issued [Plaintiff] two unreviewable violations and six reviewable violations

with ECB/OATH hearings summonses," amounting to approximately $11,000 in penalties,

consisting of $3,000 for the unreviewable violations and $8,000 for the reviewable violations.

(*Id.* ¶ 109.)

       Plaintiff retained counsel to "help navigate the ECB/OATH system," and ultimately, with

the assistance of counsel, was able to remedy the violation through mitigation and payment.[9]  (*Id.*

¶¶ 110–111.)  Following the ECB/OATH hearing in January of 2017, the ALJ issued "a written

decision demanding that [Plaintiff] pay an $800 penalty per reviewable violation, for a total of

$4,800." (*Id.* ¶ 111.)  Plaintiff understood that he had the right to appeal to the ECB Appeals

Unit and then through an Article 78 proceeding in court.  (*Id.* ¶ 112.)  However, Plaintiff decided

not to exercise this right because in order to appeal, Plaintiff "would have first had to pay the

entire amount of the reviewable penalties before his appeal would be considered and because an

---

    [8]  Currently, "the standard penalty for Class [Two] violations of Section 28-204.4 is
$1,250, while the standard penalty for Class [One] violations of Section 28-201.1 is $2,500."
(*Id.* ¶ 104.)

    [9]  On December 19, 2017, the DOB approved Plaintiff's certificates of correction for the
September 20, 2016 violations, deeming Plaintiff compliant for these violations.  (*Id.* ¶ 107.)
The DOB deemed Plaintiff compliant for the remaining violations on February 16, 2018.  (*Id.*
¶ 108.)

appeal could expose him to greater penalties than those already imposed by the DOB." (*Id.*

¶ 113.) Pursuant to the City's Rules, Plaintiff also had the "option to request that the Appeals

Unit waive the prior payment requirement under the hardship exception in 48 R.C.N.Y. § 6-

19(b)," however Plaintiff believed that "this would have been futile in his case because, while he

is not wealthy, he is also not impoverished" and "given the lack of guidance as to what

constitutes 'financial hardship,' and the fact that the determination of whether this waiver should

be granted lies entirely in the subjective decision of a single administrative law judge," Plaintiff

contends that "such an effort would have been a waste of further time and money."[10] (*Id.* ¶ 114.)

Plaintiff alleges that he was effectively "able to reduce his penalties by $3,200 by foregoing his

right to appeal," and that "[b]ut for the requirement to pay his entire fee amount prior to

appealing, he would have appealed the Hearing Officer's decision to the ECB/OATH Appeals

Unit." (*Id.* ¶¶ 119–120.) Plaintiff contends that "[b]y requiring full prepayment of a fine

associated with a reviewable violation to access an administrative appeal and then judicial

review, the City effected a pre-hearing deprivation of Plaintiff and denied due process to him."

(*Id.* ¶ 134.)

---

[10] Plaintiff alleges that other alternative avenues of payment were unavailable as he "did not believe he qualified for a waiver of his penalties pursuant to 48 R.C.N.Y. § 6-19(a)(1)(iii)(B)" and was not eligible to "participate in community service in lieu of the monetary penalty pursuant to 48 R.C.N.Y. § 6-19(a)(1)(iii)(C)." (*Id.* ¶¶ 116–117); *see* N.Y.C., N.Y., Rules, Tit. 48, § 6-19(a)(1)(iii)(B) (providing that "[w]here a respondent appeals, that respondent must indicate in writing that payment of any fines, penalties or restitution imposed by the decision has been made in full, unless" "[r]espondent received a waiver"). In addition, although the payment plan described in 48 R.C.N.Y. § 6-19(a)(1)(iii)(D) permits the respondent to pay in installments, the respondent is still required to pay the entire fee as a condition of appeal. (*Id.* ¶ 118.)

## II.   Discussion

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, a court must construe the complaint liberally, "accepting all factual allegations

therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Sacerdote v. N.Y.*

*Univ.*, 957 F.4th 141, 145 (2d Cir. Aug. 16, 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d

141, 145 (2d Cir. 2020) (same).  A complaint must plead "enough facts to state a claim to relief

that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v.*

*Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147,

152 (2d Cir. 2002)).  A claim is plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011)

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin*

*Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all

allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal

conclusions."  *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### b.   Procedural due process claim

Defendant argues that Plaintiff's due process claim fails because his claim is barred by

the applicable three-year statute of limitations.[11]  (Def.'s Mem. 1.)  In support, Defendant

---

[11]   Defendant also argues (1) "[P]laintiff's characterization of the DOB civil penalties as
unreviewable is incorrect as the enforceability of DOB civil penalties is dependent on the
validity of the predicate summonses upon which they are based, which [P]laintiff was permitted
to challenge" before the OATH, (*id.* at 1–2); and (2) "the multi-tiered administrative review
procedures available to recipients of DOB summonses and civil penalties, coupled with a New
York Civil Practice Law and Rules Article 78 proceeding . . . , clearly comports with due

contends that the penalties associated with the "unreviewable" violations were imposed on December 14, 2016, and therefore Plaintiff's claim is barred by the applicable three-year statute of limitations because Plaintiff became aware of the alleged harm — the "DOB's issuance of purportedly unreviewable violations" — in December of 2016, and "was required to commence the instant action no later than December of 2019."[12]   (*Id.* at 8 (citing *Willets Point Indus. & Realty Ass'n v. City of New York*, No. 08-CV-1453, 2009 WL 4282017, at *11 (E.D.N.Y. Nov. 25, 2009)).)

Plaintiff does not dispute that the applicable statute of limitations is three years but argues that Defendant "is wrong in its application of the statute of limitations to the facts," and that

_____

process," (*id.* at 2).  Because as discussed below the Court finds that Plaintiff's claims appear to be time barred, the Court declines to address these arguments.

In addition, because Plaintiff seeks nominal damages, (*see* Am. Compl. ¶ 154), the Court rejects Defendant's argument that Plaintiff's claim should be dismissed as "moot" based on the DOB's dismissal of the allegedly unreviewable violations, (*see* Def.'s Mem. 8 n.11).  *See 36 Apartment Assocs., LLC v. Cuomo*, 860 F. App'x 215, 216 (2d Cir. 2021) (noting that "even when a challenged policy has been discontinued, a plaintiff who seeks nominal damages for a completed violation of a legal right can satisfy the redressability element of standing" (citing *Uzuegbunam v. Preczewski*, 592 U.S. ---, ---, 141 S. Ct. 792, 801–02 (Mar. 8, 2021))); *Uzuegbunam*, 592 U.S. at ---, 141 S. Ct. at 801–02 (holding that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right").

[12] Defendant attaches multiple additional documents to its motion, but the Court declines to consider the additional information or to convert the motion to a summary judgment motion as the Court dismisses the action as time barred.  (*See* Ex. A–M annexed to the Decl. of Darren Trotter, Docket Entry No. 25); *see also Steadfast Ins. Co. v. T.F. Nugent Inc.*, 513 F. Supp. 3d 419, 423 n.2 (S.D.N.Y. 2021) ("Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a . . . motion [to dismiss], and thus complete discretion in determining whether to convert the motion to one for summary judgment." (alteration in original) (quoting *Abbey v. 3F Therapeutics Inc.*, No. 06-CV-409, 2009 WL 4333819, at *5 (S.D.N.Y. Dec. 2, 2009))); *Regan v. Village of Pelham*, No. 19-CV-7987, 2021 WL 1063320, at *8 n.6 (S.D.N.Y. Mar. 19, 2021) (holding that "[the p]laintiff's reliance on [the defendant's policy], which appears nowhere in the [a]mended [c]omplaint and is only discussed in [the p]laintiff's affidavit, is improper because it is beyond the four corners of the complaint and cannot be considered in adjudication of a Rule 12(b)(6) motion to dismiss for failure to state a claim"); *Energizer, LLC v. MTA Trading, Inc.*, No. 20-CV-1583, 2021 WL 2453394, at *3 n.6 (E.D.N.Y. June 16, 2021).

Plaintiff adequately alleges that the City failed to provide constitutionally sufficient process. (Pl.'s Opp'n 10, 15.)  In support, Plaintiff argues that (1) he "allege[s] a continuing violation of his due process rights, . . . [ending] on either (i) December 19, 2017, when the DOB accepted his certificate of compliance for the two 'predicate summonses' issued on September 20, 2016, or (ii) February 16, 2018, when the DOB accepted [Plaintiff's] certificate of compliance for the remainder of the violations"; and (2) his due process claim "did not fully accrue until the City concluded its proceedings on either December 19, 2017, or February 16, 2018, when the City failed to provide [Plaintiff] the process to which he was due."  (*Id.* at 10.)  Plaintiff argues that because he challenges "the process the City provided . . . [h]is challenge is not barred by the statute of limitations because the City's failure to provide a hearing was a continuing violation that did not cease until either December 19, 2017, or February 16, 2018."  (*Id.* at 12.)

The Constitution imposes "constraints," ordinarily in the form of notice and a pre-deprivation hearing, on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 196 (2d Cir. 2020) (Chin, J., concurring in part and dissenting in part) (quoting *Mathews*, 424 U.S. at 335).  The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and "those who seek to invoke its procedural protection must establish that one of these interests is at stake."  *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012)).  A court first asks "whether there exists a liberty or property interest of which a person has been deprived," and if so, "whether the procedures followed by the State were constitutionally sufficient."  *Id.* (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)).

The statute of limitations for claims brought pursuant to section 1983 is determined by state law, and in New York State, the statute of limitations for actions brought pursuant to section 1983 is three years.  *See Owens v. Okure*, 488 U.S. 235, 249–51 (1989) (holding that the most appropriate statute of limitations in a section 1983 action is found in the "general or residual [state] statute [of limitations] for personal injury actions"); *Sant v. Stephens*, 821 F. App'x 42, 44–45 (2d Cir. 2020) ("The statute of limitations for actions brought in New York pursuant to [§ 1983] . . . is three years." (first citing *Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir 2001); and then citing *Owens v. Okure*, 816 F.2d 45, 49 (2d Cir. 1987), *aff'd*, 488 U.S. 235 (1989))); *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under [s]ection 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law.").  "While state law supplies the statute of limitations for claims under [section] 1983, federal law determines when a federal claim accrues.  The claim accrues when the plaintiff knows or has reason to know of the harm."  *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (per curiam) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)); *see also Sant*, 821 F. App'x at 45 ("Claims brought pursuant to [section] 1983 . . . accrue 'once the plaintiff knows or has reason to know of the injury which is the basis of his action.'" (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994))); *Shomo*, 579 F.3d at 181 ("A [s]ection 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'" (quoting *Eagleston,* 41 F.3d at 871)).

The continuing violation doctrine applies only "to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment" and not to "discrete unlawful acts, even where those discrete acts are part of a 'serial violation[].'"

*Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration in original) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002))); *Lucente v. County of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (stating that the continuing violation doctrine does not apply to "discrete unlawful acts," even if those discrete unlawful acts are part of "serial violations" (citing *Morgan*, 536 U.S. at 114–15)).  "Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has 'engaged in enough activity to make out an actionable . . . claim.'"  *Gonzalez*, 802 F.2d at 220 (quoting *Morgan*, 536 U.S. 117); *see also McFadden v. Kraklik*, No. 04-CV-8135, 2007 WL 924464, at *7 (S.D.N.Y. Mar. 28, 2007) (stating that "a party cannot invoke the doctrine to avoid statute of limitations problems when the party had knowledge after each wrongful act that it was actionable, but chose not to file a claim" (quoting *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 262–63 (N.D.N.Y. 2003))); *Sundaram v. Brookhaven Nat'l Lab'ys*, 424 F. Supp. 2d 545, 560 (E.D.N.Y. 2006) ("It 'would subvert the underlying purpose of the time limit, which is to ensure expedition in the filing and handling of claims of discrimination,' to apply the continuing violation exception in cases where a plaintiff is on notice of alleged discriminatory acts." (quoting *Govia v. Century 21, Inc.*, 140 F. Supp. 2d 323, 325 (S.D.N.Y. 2005))).  Because the "cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages," the continuing violation doctrine does not apply "even though the full extent of the injury is not then known or predictable."  *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007))).

   "Under the continuing violation doctrine, a plaintiff may bring claims that would otherwise be barred by the statute of limitations provided that 'an act contributing to that [violation] took place within the statutory time period.'"  *Sant*, 821 F. App'x at 45 (alteration in

original) (quoting *Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019))); *Velez v. Reynolds*, 325 F. Supp. 2d 293, 312 (S.D.N.Y. 2004) ("The continuing violation doctrine generally provides that where there is a discriminatory practice or policy, the accrual time for the statute of limitations may be delayed until the last act in furtherance of the policy." (citing *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999))); *see also Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980) ("[A] claim to redress a continuing wrong will be deemed to have accrued on the date of the last wrongful act."); *Margrabe v. Sexter & Warmflash, P.C.*, No. 07-CV-2798, 2009 WL 361830, at *7 (S.D.N.Y. Feb. 11, 2009) ("The continuing wrong doctrine provides that, in certain cases involving continuous or repeated wrongs, the statute of limitations accrues upon the date of the last wrongful act." (first citing *Mix v. Del. & Hudson Ry. Co.*, 345 F.3d 82, 88 (2d Cir. 2003); and then citing *Leonhard*, 633 F.2d at 613), *aff'd*, 353 F. App'x 547 (2d Cir. 2009)).

Although the continuing violation doctrine is usually applied in the context of Title VII claims, it has been extended outside the employment discrimination context.[13] *See Carvel v. Durst*, No. 09-CV-6733, 2010 WL 10027356, at *4 (S.D.N.Y. Oct. 18, 2020) ("[T]he continuing violation doctrine has 'usually-but not exclusively-been applied in the context of Title VII discrimination claims.'" (quoting *Remigo v. Kelly*, No. 04-CV-1877, 2005 WL 1950138, at *6 (S.D.N.Y. Aug. 12, 2005))); *Connolly*, 254 F.3d at 41 (applying the continuing wrong doctrine to the plaintiff's federal constitutional claims, brought pursuant to 42 U.S.C. § 1983 against New York's pension system and finding that "a new claim accrued" "every two years" when the

---

[13] However, the continuing violation doctrine has generally only been extended in allegations involving discrimination. *See Koehl v. Greene*, No. 06-CV-478, 2007 WL 2846905, at *7 & n.41 (N.D.N.Y. Sept. 26, 2007) (adopted report and recommendation and collecting cases).

plaintiff "was forced . . . to give up accrual of [New York State Organized Crime Task Force] pension benefits in order to retain his NYPD pension"). However, the continuing violation doctrine "may only be predicated on continuing unlawful [wrongs] and not on the continuing effects of earlier [wrong]ful conduct." *Margrabe*, 2009 WL 361830, at *7 (alterations in original) (quoting *Selkirk v. State*, 671 N.Y.S.2d 824, 825 (App. Div. 1998)); *see also Harris*, 186 F.3d at 250 ("[A] continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997))); *McFadden v. Kralik*, No. 04-CV-8135, 2007 WL 924464, at *7 (S.D.N.Y. Mar. 28, 2007) ("[Th]e mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation." (alteration in original) (quoting *Blankman v. County of Nassau*, 819 F. Supp. 198, 207 (E.D.N.Y. 1993))).

In addition, extensions of the continuing violation doctrine have been generally disfavored among district courts within the Second Circuit and "applied only upon a showing of compelling circumstances." *Remigio*, 2005 WL 1950138, at *8 (quoting *Nakis v. Potter*, No. 01-CV-10047, 2004 WL 2903718, at *10 n.2 (S.D.N.Y. Dec. 15, 2004)); *Bernstein v. The MONY Grp., Inc.*, 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002) ("As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." (quoting *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 244 (S.D.N.Y. 2000))).

Plaintiff's claim is barred by the three-year statute of limitations as he alleges that the events giving rise to his claim occurred on September 20, 2016, when the DOB issued the initial two notices of violation for performing work without a permit, and on November 19, 2016, when the DOB issued two additional notices of violation for failing to comply with the commissioner's

19

order from the September 20, 2016 violation and for failing to file a certificate of correction.[14]

(*See* Am. Compl. ¶¶ 96, 99, 102.)  Plaintiff commenced this action on November 10, 2020, more

than four years after these events.  (*See* Compl.)  Therefore, Plaintiff's claims are time barred.

Moreover, the factual allegations do not support application of the continuing violation

doctrine as Plaintiff fails to allege that he was unaware of the alleged due process violation when

the City issued the civil penalties for constructing the pigeon coop without a permit.  (*See* Am.

Compl. ¶¶ 96, 99, 102.)  Therefore, Plaintiff's claim accrued on September 20, 2016, and

November 19, 2016 — when the City issued the purportedly unreviewable penalties.  *See*

*Konigsberg*, 267 F. Supp. 2d at 262–63 ("A party cannot invoke the doctrine to avoid statute of

limitations problems when he knew after each allegedly wrongful act that it was actionable, but

chose not to file federal claims regarding them within the limitations period."); *Sant v. Stephens*,

No. 18-CV-9954, 2019 WL 5965247, at *2, *5–6 (S.D.N.Y. Nov. 12, 2019) (declining to apply

continuing violation doctrine to, *inter alia*, the plaintiff's due process claim based on the

defendant's refusal to grant the building variance and finding that the statute of limitations

accrued when the defendants issued the "appearance complaint ticket" for building code

violations), *aff'd*, 821 F. App'x 42 (2d Cir. 2020); *cf. Gierlinger v. Town of Brant*, No. 13-CV-

---

[14]   To the extent the Complaint may be construed to argue that in addition to violating
Plaintiff's due process protections in issuing the September 20, 2016 notices of violation, the
City also violated Plaintiff's constitutional rights by requiring that he pay the penalties associated
with the September 20, 2016 violations as a condition of appeal, courts have considered and
rejected this argument.  *See Sheng v. City of New York*, No. 05-CV-1118, 2009 WL 6871132, at
*10, *16 (E.D.N.Y. June 26, 2009), *report and recommendation adopted*, 2009 WL 6871132
(E.D.N.Y. June 26, 2021) (finding that the New York City Department of Finance's
"requirement that fines be paid or a bond posted" as a condition to a right to appeal following a
hearing is constitutional (citing *All Aire Conditioning, Inc. v. City of New York*, 979 F. Supp.
1010, 1021 (S.D.N.Y. 1997)); *All Aire Conditioning, Inc*, 979 F. Supp. at 1021 ("The
conditioning of an appeal on the posting of a bond undeniably is constitutional." (citing *Saharoff
v. Stone*, 638 F.2d 90, 92 (9th Cir. 1980))).

370, 2015 WL 269131, at *7–8 (W.D.N.Y. Jan. 21, 2015) (adopting report and recommendation and finding that the statute of limitations on the plaintiff's substantive due process claim against the defendants for filing false charges and "retaliation for political speech, activism and affiliation" "accrued when [the] plaintiffs were served with their appearance tickets," not at the time of trial and prosecution).

Plaintiff relies on *Remigio* to argue that the continuing violation doctrine renders his claim timely because each day the City failed to provide Plaintiff a hearing to contest the unreviewable civil penalty "constituted a 'daily failure to act,'" in violation of his due process protections.[15]  (Pl.'s Opp'n 12 (quoting *Remigio*, 2005 WL 1950138, at *10).)  In *Remigio*, the court determined that the continuing violation doctrine applied to the plaintiff's procedural due process claim arising from the defendant's failure to provide a hearing as required by the statute after seizing the plaintiff's car pursuant to arrest.  2005 WL 1950138, at *8–11.  The court distinguished the plaintiff's case from *Delaware State College v. Ricks*, 449 U.S. 250 (1980) and its progeny, which held that the statute of limitations accrues at the time of the unlawful act, "not the point at which the consequences of the act become painful," *id.* at *7 (first citing *Ricks*, 449 U.S. at 257–58; and then quoting *Chandon v. Fernandez*, 454 U.S. 6, 8 (1981)), because in addition to the initial seizure, the plaintiff's injury was compounded by "the continued

---

[15]  In addition, Plaintiff cites to *Urbina v. Port Authority*, No. 15-CV-8647, 2017 WL 3600424, at *5 (S.D.N.Y. Aug. 18, 2017) for the proposition that Defendant's ongoing failure to provide a hearing constitutes a continuing violation, (*see* Pl.'s Opp'n 13), but *Urbina* is distinguishable as the plaintiff was suspended from his employment with the Port Authority without pay and denied his right to a hearing for over four years.  2017 WL 3600424, at *2. Thus, with each withheld paycheck, the defendant compounded the plaintiff's financial injury over the course of his four-year suspension.  In contrast, Plaintiff here does not allege that his financial injury was similarly compounded as a result of Defendant's failure to provide a hearing.

impoundment of [plaintiff's] vehicle, without providing him recourse to challenge the retention, [which] caused him 'substantial personal and economic hardship,'" *id.* at *10.

In contrast, in the instant case, even accepting that Plaintiff suffered a due process injury when the City issued Plaintiff an unreviewable penalty for constructing the pigeon coop without first obtaining a permit, beyond this initial injury, Plaintiff does not allege that his injury was somehow compounded or made worse by the City's failure to provide a hearing, only that "[t]he City's actions . . . interfered with his use and enjoyment of his home," (Pl.'s Opp'n 16), and that the penalty amount was subject to interest, (Am. Compl. ¶ 88). Both injuries are ongoing consequences of the discrete, allegedly unconstitutional acts of imposing civil penalties without providing Plaintiff a forum to contest the violation. *See Shenk v. State Univ. of N.Y. at Cortland*, No. 19-CV-1287, 2019 WL 7484046, at *5 (N.D.N.Y. Nov. 13, 2019) (declining to apply the continuing violation doctrine based on the plaintiff's subsequent loss of work resulting from the defendant university's alleged contract breach in denying the plaintiff his degree based on the defaulted loan" as "[t]he court must distinguish between a 'continuing violation' and a violation with 'continuing consequences'" (quoting *Melendez v. Schneiderman*, No. 13-CV-622, 2014 WL 2154536, at *12 (N.D.N.Y. May 22, 2014))), *report and recommendation adopted* 2020 WL 58628 (N.D.N.Y. Jan. 6, 2020); *Gregory v. Inc. Village of Centre Island*, No. 14-CV-2889, 2015 WL 5093623, at *5 (E.D.N.Y. Aug. 28, 2015) (declining to apply the continuing violation doctrine as each of the defendant's actions that frustrated the plaintiff's attempt to obtain zoning variances constituted separate claims and noting that "the Second Circuit has clearly stated that ongoing harms flowing from discrete events do not trigger the application of the continuing violation doctrine" (first citing *Brevot v. N.Y.C. Dep't of Educ.*, 299 F. App'x 19, 21 (2d Cir. 2008); and then citing *Wormer v. City of Rensselaer*, 293 F. App'x 783, 783 (2d Cir. 2008)));

*Remigio*, 2005 WL 1950138, at *8 (noting that "[i]f [the plaintiff] had simply complained about the continuing ill effects from the deprivation of his property following its seizure, the continuing violation doctrine could not apply because [the plaintiff] would be complaining about the painful consequences of that original act" (first citing *Johnson v. Cullen*, 925 F. Supp. 244, 248–50 (D. Del. 1996); and then citing *Shannon v. Recording Indus. Ass'n of Am.*, 661 F. Supp. 205, 211 (S.D. Ohio 1987))); *Johnson*, 925 F. Supp. at 248–50 (holding that "because the injury arose from the unlawful seizure" "of certain items of personal property belonging to the plaintiffs," "any injuries suffered by the plaintiffs stemmed from the initial, single, unlawful act" and that continued retention of property by defendants did not constitute a continuing violation).

Moreover, the Second Circuit has clarified that the statute of limitations accrues when the notice of violation is issued, not upon final disposition of the matter. *See Campbell*, 782 F.3d at 99–100 (finding that the plaintiff's First Amendment retaliation claim accrued when the plaintiff was issued traffic tickets, not at the time of trial, despite the fact that "the full scope of [the plaintiff's] injury was not known at that time, including whether or not she would be convicted of the traffic infractions").

### c.  Leave to amend

The parties do not address whether the Court should grant Plaintiff leave to amend the Amended Complaint.

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second alteration in original)

(citation omitted) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given).

The Court grants Plaintiff leave to amend the Amended Complaint to add allegations to support the applicability of the continuing violation doctrine.  Plaintiff must allege that the City's failure to provide a hearing compounded Plaintiff's injury following the issuance of the initial notices or that the continuing violation doctrine otherwise applies.

If Plaintiff decides to file a second amended complaint, Plaintiff must do so within thirty days of the date of this Memorandum and Order.  If Plaintiff elects not to file a second amended complaint or fails to file a second amended complaint within thirty days of this Memorandum and Order, the Court will direct the Clerk of Court to enter judgment dismissing the Amended Complaint with prejudice for the reasons stated above.

## III.  Conclusion

For the foregoing reasons, the Court grants Defendant's motion, dismisses the Amended Complaint as time barred, and grants Plaintiff leave to file a second amended complaint within thirty days.

Dated:  December 20, 2021
Brooklyn, New York

SO ORDERED:

 s/ MKB
MARGO K. BRODIE
United States District Judge

24